# Supreme Court of Florida

_____

No. SC19-329
_____

**MARY BETH JACKSON, etc.,**
Petitioner,

vs.

**RON DESANTIS, GOVERNOR,**
Respondent.

April 16, 2019

PER CURIAM.

Article IV, section 7(a) of the Florida Constitution authorizes the governor to suspend county officers on several enumerated grounds, including "neglect of duty" and "incompetence." On January 11, 2019, in Executive Order 19-13, Governor Ron DeSantis invoked that authority and cited those grounds to suspend Mary Beth Jackson, Superintendent of Schools for Okaloosa County. Jackson has petitioned this Court for a writ of quo warranto, a remedy used to challenge a state officer's exercise of power derived from the State. We have jurisdiction, *see* art. V, § 3(b)(8), Fla. Const., but we deny Jackson's petition.

The gist of Jackson's petition is that the Governor exceeded his suspension authority by relying "exclusively" on conduct alleged to have occurred during Jackson's prior term in office. Jackson was first elected for a term beginning on November 20, 2012, and the voters subsequently reelected her to an additional four-year term beginning on November 22, 2016. Jackson claims that the misconduct alleged in Executive Order 19-13 is limited to acts that occurred no later than the 2015-2016 school year, which ended months before the beginning of Jackson's current term of office.

Our review of Executive Order 19-13 leads us to conclude that Jackson's petition is based on a faulty premise. Read fairly and in its entirety, the suspension order alleges acts and omissions occurring during Jackson's current term and bases Jackson's suspension on her alleged ongoing mismanagement of the school district. Specifically, the suspension order relies in part on Okaloosa County Grand Jury Reports dated February 20, 2018, and June 13, 2018—well into Jackson's current term of office. The suspension order explains that those grand jury reports faulted Jackson's longer-term response to allegations made during the 2015-2016 school year about a teacher's abuse of special needs students. According to the suspension order, the grand jury found systemic failures in Jackson's training and supervision of personnel, "especially in the areas of ethics, child abuse, and mandatory reporting obligations." The text of the suspension

order leaves no doubt that, in the Governor's view, those failures continued up to the time of Jackson's suspension in January 2019: "Superintendent Jackson has failed in her responsibilities and duties . . . due to her failure to provide adequate, necessary, and frequent training, a lack of supervision of school district personnel, and a failure to implement adequate safe-guards, policies, and reporting requirements to protect the safety and well-being of the students."

Because Executive Order 19-13 alleges misconduct occurring in Jackson's current term, there is no need for us to address the constitutional validity of a hypothetical suspension order alleging facts that relate exclusively to a suspended official's earlier term in office. To the extent that prior cases of this Court have addressed that issue, we take no position on those cases here. Nor do we express any views on the scope of evidence that the Senate may consider in any proceeding relating to Jackson's suspension.

We remain mindful of our limited role in reviewing the exercise of the suspension power, which the Constitution commits to the governor and which inherently involves "judgment and discretion." *State ex rel. Hardie v. Coleman*, 155 So. 129, 133 (Fla. 1933). If a suspension order "names one or more of the grounds embraced in the Constitution and clothes or supports it with alleged facts sufficient to constitute the grounds or cause for suspension, it is sufficient." *Id.* Executive Order 19-13 satisfies that standard.

Accordingly, the petition for writ of quo warranto is hereby denied.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, LUCK, and MUÑIZ, JJ., concur.
LAGOA, J., concurs in result only with an opinion.

ANY MOTION FOR REHEARING OR CLARIFICATION MUST BE FILED WITHIN THREE DAYS. A RESPONSE TO THE MOTION FOR REHEARING/CLARIFICATION MAY BE FILED WITHIN TWO DAYS AFTER THE FILING OF THE MOTION FOR REHEARING/CLARIFICATION. NOT FINAL UNTIL THIS TIME PERIOD EXPIRES TO FILE A REHEARING/CLARIFICATION MOTION AND, IF FILED, DETERMINED.

LAGOA, J., concurring in result only.

I concur in denying Jackson's petition, but I reach this conclusion based on the text of article IV, section 7 of the Florida Constitution. Article IV, section 7 of the Constitution does not impose a temporal limitation on the executive's suspension power such that the constitutionally enumerated grounds resulting in suspension must occur during the suspended officer's current term of office.

Article IV, section 7(a) of the Florida Constitution provides:

By executive order stating the grounds and filed with the custodian of state records, the governor may suspend from office any state officer not subject to impeachment, any officer of the militia not in the active service of the United States, or any county officer, for malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform official duties, or commission of a felony, and may fill the office by appointment for the period of suspension. The suspended officer may at any time before removal be reinstated by the governor.

- 4 -

After the Governor executes the order of suspension, the Florida Senate "may, in proceedings prescribed by law, remove from office or reinstate the suspended official." Art. IV, § 7(b), Fla. Const. Where the language of the Constitution "is clear, unambiguous, and addresses the matter in issue, then it must be enforced as written," as the "constitutional language must be allowed to 'speak for itself.'" *Fla. Soc'y of Ophthalmology v. Fla. Optometric Ass'n*, 489 So. 2d 1118, 1119 (Fla. 1986).

Article IV, section 7 of the Constitution provides a full and complete method for the suspension and removal of certain categories of officers. Article IV, section 7(a) expressly and unambiguously vests the Governor with the power to suspend. The only constitutional requirements imposed on the Governor are that (1) the officer be a member of one of the three identified categories (a state officer not subject to impeachment, an officer of the militia not in the active service of the United States, or a county officer), (2) the suspension be for one of the constitutionally enumerated grounds (malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform official duties, or commission of a felony), and (3) the Governor file an executive order of suspension stating those grounds with the "custodian of state records," i.e., the Secretary of State. Article IV, section 7(b) expressly and unambiguously vests the

Senate with the power to remove or reinstate the officer through "proceedings prescribed by law."

As previously noted by this Court, the Governor's suspension power is "executive" and "so long as the Governor acts within his jurisdiction as charged by organic law, [i.e., the Constitution,] his action may not be reviewed by the courts." *State ex rel. Hardie v. Coleman*, 155 So. 129, 133 (Fla. 1933). Similarly, the Senate's judgment of removal or reinstatement "is final, and will not be reviewed by the courts," as under the constitutional process for suspension and removal, the "Senate is nothing less than a court provided to examine into and determine whether or not the Governor exercises the power of suspension in keeping with the constitutional mandate." *Id.* at 134. Assuming that the suspended officer falls into one of the constitutionally enumerated categories and that the Governor has filed the executive order of suspension with the custodian of records, the plain language of the Constitution excludes the judiciary from involving itself in the suspension and removal process save for a limited exception.

Turning to that exception, the Constitution requires the Governor to issue an executive order of suspension "stating the grounds" of suspension. While a suspended officer may ask the courts to examine an executive order of suspension to ensure that the order satisfies that constitutional requirement, the judiciary's role is limited to determining whether the executive order, on its face, sets forth

allegations of fact relating to one of the constitutionally enumerated grounds of suspension. *Id.* at 133. Therefore, "[a] mere arbitrary or blank order of suspension without supporting allegations of fact, even though it named one or more of the constitutional grounds of suspension, would not meet the requirements of the Constitution," *id.*, but where the executive order of suspension contains factual allegations relating to an enumerated ground for suspension, the Constitution prohibits the courts from examining or determining the sufficiency of the evidence supporting those facts, as the "matter of reviewing the charges and the evidence to support them is solely in the discretion of the Senate," *id.* at 134; *see also State ex rel. Kelly v. Sullivan*, 52 So. 2d 422, 425 (1951) ("It is the function of the Senate, and never that of the Courts, to review the evidence upon which the Governor suspends an officer in the event the Governor recommends his removal from office.").[1] As a result, the factual allegations in an executive order of suspension must pass only a low threshold to satisfy the judiciary's limited, facial review, and

---

1. *Hardie* and *Kelly* both involved article IV, section 15 of the 1885 Florida Constitution, which is the predecessor to article IV, section 7 of the current Constitution. Like the current Constitution, the 1885 Constitution reserved to the Governor the suspension power. Regarding the removal power, however, the 1885 Constitution provided that "the Governor, by and with the consent of the Senate, may remove any officer, not liable to impeachment, for any cause above named." Thus, under the 1885 Constitution, "removals [were] accomplished by the joint action of the Governor and the Senate." *Hardie*, 155 So. at 130. Because the 1968 Constitution vests the removal power exclusively with the Senate, our prior descriptions of the Senate's role as the sole arbiter of the evidence supporting the Governor's exercise of his suspension power apply with even greater emphasis.

"if, on the whole, [the executive order] contains allegations that bear some reasonable relation to the charge made against the officer, it will be adjudged as sufficient." *Hardie*, 155 So. at 133.

Under this standard, Executive Order 19-13 satisfies the requirements of article IV, section 7(a). Reviewing the four corners of the Executive Order, the Governor suspended Jackson, a county officer, on the constitutionally enumerated grounds of "neglect of duty" and "incompetence." The Executive Order supports those two grounds with various factual allegations against Jackson that, on their face, reasonably relate to the charges of neglect of duty and incompetence made against Jackson. Whether there is any merit to the grounds listed in Executive Order 19-13 for Jackson's suspension from office is a determination to be made exclusively by the Florida Senate under the Constitution.

Ordinarily, this would end the judicial inquiry. Jackson, however, contends that article IV, section 7(a) limits the Governor's suspension power to acts occurring during the officer's current term of office.

In considering Jackson's argument, the analysis again begins with the text of the Constitution, for it is the constitutional language that delineates the executive power to suspend. As discussed above, article IV, section 7(a) of the Constitution imposes only three requirements on the Governor's exercise of the suspension power: (1) the officer suspended must fall into one of the constitutionally

- 8 -

enumerated categories; (2) the suspension must be based on one of the constitutionally enumerated grounds for suspension; and (3) the Governor must file an executive order of suspension stating those grounds with the custodian of state records. Significantly, article IV, section 7(a) does not state that the enumerated grounds resulting in suspension must occur within the officer's current term.

In support of her position that article IV, section 7(a) limits the Governor's suspension power to acts that occur within the suspended officer's current term, Jackson relies on this Court's advisory opinion to Governor Gilchrist in *In re Advisory Opinion to Governor*, 60 So. 337 (Fla. 1912) ("*1912 Advisory Opinion*").[2] In the *1912 Advisory Opinion*, this Court provided Governor Gilchrist

---

2. Jackson also relies upon this Court's decision in *State ex rel. Turner v. Earle*, 295 So. 2d 609 (Fla. 1974). *Turner* held that the Judicial Qualifications Commission ("JQC") could not discipline a circuit court judge for misconduct alleged to have occurred while that judge held another judicial office outside of the JQC's constitutional jurisdiction. The Court additionally noted that a jury had already acquitted the judge of the alleged felony that was to be the subject of the JQC's purported inquiry. *See id.* at 619. Relying on the *1912 Advisory Opinion*, this Court stated that "a public officer may not be removed from office for misconduct which he committed in another public office or in a prior term of office . . . ." *Id.* at 613. The Court in *Turner* expressly cautioned that "[a]ll dictum in this opinion must be read in the context of the circumscribed facts and *not considered a precedent in cases involving different facts*," *id.* at 619, and we have rejected the application of *Turner* in situations involving different facts, *see Fla. Bar v. McCain*, 361 So. 2d 700, 704 (Fla. 1978).

The facts at issue in the instant petition are materially different from those at issue in *Turner*, and applying *Turner* here would run afoul of our earlier warning regarding its limited application. Moreover, Jackson's petition concerns the Governor's power to suspend under article IV, section 7, not the JQC's jurisdiction

- 9 -

with an advisory opinion that article IV, section 15 of the 1885 Florida Constitution (the predecessor to article IV, section 7 of the 1968 Florida Constitution) did not authorize the Governor to suspend a county officer for an act of malfeasance or misfeasance committed by him prior to the date of the beginning of his current term in office.  Relying on an earlier advisory opinion, *In re Advisory Opinion to the Governor*, 12 So. 114 (Fla. 1893) ("*1893 Advisory Opinion*"), the *1912 Advisory Opinion* noted that the "power . . . given the Governor to suspend the incumbent of an office and to fill the office by appointment is necessarily confined to the current term of the office."  60 So. at 337.  From the *1893 Advisory Opinion*'s conclusion that an appointment is limited to the remainder of the suspended official's term, the *1912 Advisory Opinion* concluded that "the Constitution contemplates that the causes for suspension from office shall arise from the conduct of the officer during the term for which the officer is then in commission."  60 So. at 337-38.

This statement, however, does not follow from a natural reading of the constitutional text, as neither article IV, section 7(a) of the Constitution nor its

_____

to discipline under article V, section 12 of the Florida Constitution.  As discussed below, the *1912 Advisory Opinion*, which *Turner* relies on, is unsupported by the plain language of article IV, section 7, and importing *Turner* into our analysis of article IV, section 7 would be contrary to our long-established precedent that the cornerstone of constitutional interpretation begins with the "examination of that provision's explicit language."  *Fla. Soc'y of Ophthalmology*, 489 So. 2d at 1119.

- 10 -

predecessor (article IV, section 15 of the 1885 Constitution) states that only acts occurring within the officer's current term can form the basis for a suspension. As there is nothing in the constitutional text relating to any temporal limitation on the Governor's power to suspend, it is impossible to say that the Constitution "contemplates" an additional requirement on the exercise of this constitutionally authorized executive power.

While a gubernatorial appointment following a suspension lasts only for the remainder of the suspended officer's current term of office, it does not follow that there is a constitutionally mandated correlation between the duration of an officer's suspension and the dates on which the acts giving rise to suspension occurred. Indeed, it is not hard to imagine situations where an officer's misconduct in a prior term implicates his or her fitness to serve the remainder of his or her current term. For example, an officer could have committed a felony or engaged in malfeasance during a prior term of office that went undetected until after reelection to the current term. It is not necessary to indulge in a series of hypotheticals to try to parse which ones may or may not be subject to the exercise of the suspension power, however, because nothing in the plain language of article IV, section 7(a) prohibits the Governor from suspending an officer based on an enumerated act that occurred prior to the officer's current term. The Constitution then places the responsibility on the Senate to determine whether removal or reinstatement is

warranted based on those facts and the evidence presented at proceedings before that body.

Because the *1912 Advisory Opinion* is premised on unsound legal principles with no support in the plain and unambiguous language of article IV, section 7(a) of the Constitution, I would disapprove its statement that "the Constitution contemplates that the causes for suspension from office shall arise from the conduct of the officer during the term for which the officer is then in commission."

The Constitution establishes a clear and unambiguous process for suspension and removal. The Governor may suspend for one or more of the grounds enumerated in article IV, section 7(a), and the Senate may remove or reinstate the officer pursuant to article IV, section 7(b). The Constitution reserves to the Senate the sole responsibility for reviewing the evidence supporting the Governor's executive order of suspension, and it is the constitutional role of the Senate to consider whether the suspended officer merits removal or reinstatement. Assuming the suspended officer falls within one of the constitutionally enumerated categories and the Governor has filed the executive order of suspension with the state custodian of records, the judiciary's sole role in this process involves a facial review of the executive order of suspension to determine whether it is merely a blank order of suspension without supporting allegations of fact or whether it contains allegations that bear some reasonable relation to the charge made against

the officer. This is "due entirely to the fact that the Constitution itself has set up its own special court to try the matter, namely the state Senate." *Hardie*, 155 So. at 136 (Davis, C.J., concurring). Nothing in the constitutional text limits the executive suspension power to acts occurring within the suspended officer's current term, and by imposing an additional requirement on the executive suspension power not found in the text, the *1912 Advisory Opinion* improperly inserted the courts into a process that the Constitution leaves to the Governor and the Senate.

For the reasons stated, I concur in denying Jackson's petition for writ of quo warranto.

Original Proceeding – Quo Warranto

George T. Levesque and D. Ty Jackson of GrayRobinson, P.A., Tallahassee, Florida,

    for Petitioner

Joe Jacquot, General Counsel, Nicholas A. Primrose, John MacIver, and Colleen Ernst, Deputy General Counsel, Executive Office of the Governor, Tallahassee, Florida,

    for Respondent