# Supreme Court of Florida

_____

No. SC19-552
_____

**SCOTT J. ISRAEL, SHERIFF,**
Appellant,

vs.

**RON DESANTIS, GOVERNOR,**
Appellee.

April 23, 2019

LAGOA, J.

Scott J. Israel ("Israel"), the Sheriff of Broward County, Florida, appeals the circuit court's dismissal of his petition for writ of quo warranto, challenging Governor Ron DeSantis's authority to suspend him from office in Executive Order 19-14. Israel appealed the circuit court's order to the Fourth District Court of Appeal, which certified the appeal to this Court as one of great public importance requiring immediate resolution by this Court. We have jurisdiction, *see* art. V, § 3(b)(5), Fla. Const., and affirm the circuit court's order dismissing Israel's petition.

# BACKGROUND

In 2016, Israel was reelected as the Sheriff of Broward County, Florida, for a four-year term. Following Israel's reelection, two mass shootings occurred during Israel's term of office: the January 6, 2017, shooting at the Fort Lauderdale-Hollywood Airport in Broward County and the February 14, 2018, school shooting at Marjory Stoneman Douglas High School in Parkland, Florida.

On January 2, 2019, the Marjory Stoneman Douglas Public Safety Commission Report was released. Thereafter, on January 11, 2019, Governor Ron DeSantis issued Executive Order 19-14, suspending Israel from office. Executive Order 19-14 alleged that certain actions by Israel "constitute[d] neglect of duty and incompetence." In support of these grounds for Israel's suspension, Executive Order 19-14 asserts various factual allegations, based in part on the Marjory Stoneman Douglas Public Safety Commission Report and an internal investigation into the Fort Lauderdale-Hollywood Airport shooting. Executive Order 19-14 details how Israel allegedly "egregiously failed in his duties as Sheriff for Broward County," stating that two separate reports "specifically found that Sheriff Israel has not and does not provide frequent training for his deputies resulting in the deaths of twenty-two individuals and a response that is inadequate for the future safety of Broward County residents" and "specifically found that Sheriff Israel has not implemented proper protocols to provide guaranteed access to emergency services,

nor proper protocols to have timely, unified command centers set up to control a crime scene leading to confusion, a lack of recognized chain-of-command, and ultimately a failure to contain the dangerous situation."

On March 7, 2019, Israel filed a petition for writ of quo warranto in the Circuit Court of the Seventeenth Judicial Circuit, alleging that Governor DeSantis exceeded his constitutional authority when suspending Israel.[1]  On April 4, 2019, the circuit court issued a written order dismissing Israel's petition.  In its order, the circuit court found that "the allegations set forth in Executive Order 19-14 [were] sufficient to support the specified grounds of neglect of duty and incompetence, and therefore, [met] the jurisdictional requirements for suspension."  The circuit court further found that Executive Order 19-14 "alleges facts that support and bear a reasonable relation to the stated grounds" of neglect of duty and incompetence.

On April 5, 2019, Israel appealed the circuit court's order to the Fourth District Court of Appeal.  On April 9, 2019, the Fourth District certified the case for pass-through jurisdiction, finding that the appeal involved a question of great public importance that required immediate resolution by this Court.

---

1.  On January 29, 2019, Israel sought formal review on the merits of his suspension from the Florida Senate, as provided for under article IV, section 7(b) of the Florida Constitution.  The Senate scheduled a hearing on Israel's suspension for the week of April 8, 2019, but abated its review pending resolution of Israel's petition.

**STANDARD OF REVIEW**

"Since the nature of an extraordinary writ is not of absolute right, the granting of such writ lies within the discretion of the court." *Topps v. State*, 865 So. 2d 1253, 1257 (Fla. 2004). Accordingly, we generally review a circuit court's decision on a petition for writ of quo warranto for an abuse of discretion. *See Detzner v. Anstead*, 256 So. 3d 820, 822 n.4 (Fla. 2018). However, because Israel's petition also concerns matters of constitutional interpretation, our review of the circuit court's constitutional interpretation is de novo. *See Zingale v. Powell*, 885 So. 2d 277, 280 (Fla. 2004).

**ANALYSIS**

Article V, section 3(b)(8) of the Florida Constitution authorizes the judiciary to issue writs of quo warranto "to state officers and state agencies." "Quo warranto is used 'to determine whether a state officer or agency has improperly *exercised* a power or right derived from the State.' " *League of Women Voters of Fla. v. Scott*, 232 So. 3d 264, 265 (Fla. 2017) (alteration in original) (quoting *Fla. House of Representatives v. Crist*, 999 So. 2d 601, 607 (Fla. 2008)). The Governor is a state officer. *See Whiley v. Scott*, 79 So. 3d 702, 707 (Fla. 2011).

Israel contends that the trial court erred in dismissing his petition for writ of quo warranto, arguing that Governor DeSantis lacks the authority to suspend Israel from office because Executive Order 19-14 does not provide an "objective factual

predicate" to conclude Israel neglected or incompetently performed a specific "duty for which he was bound by law to perform."

We begin our analysis with the plain language of article IV, section 7(a) of the Constitution. *Zingale*, 885 So. 2d at 282. Where the language of the Constitution "is clear, unambiguous, and addresses the matter in issue, then it must be enforced as written," as the "constitutional language must be allowed to 'speak for itself.' " *Fla. Soc'y of Ophthalmology v. Fla. Optometric Ass'n*, 489 So. 2d 1118, 1119 (Fla. 1986); *accord Pleus v. Crist*, 14 So. 3d 941, 944 (Fla. 2009) ("If that language is clear, unambiguous, and addresses the matter in issue, then it must be enforced as written." (quoting *Lawnwood Med. Ctr., Inc. v. Seeger*, 990 So. 2d 503, 511 (Fla. 2008))).

Article IV, section 7(a) of the Constitution provides that the Governor "may suspend from office . . . any county officer, for malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform official duties, or commission of a felony." Once the Governor suspends a public official, the Florida Senate has the exclusive role of determining whether to remove or reinstate that suspended official. Art. IV, § 7(b), Fla. Const.

As we recently stated, the judiciary has a "limited role in reviewing the exercise of the suspension power, which the Constitution commits to the governor and which inherently involves 'judgment and discretion.' " *Jackson v. DeSantis*,

No. SC19-329, slip op. at 3 (Fla. Apr. 16, 2019) (quoting *State ex rel. Hardie v. Coleman*, 155 So. 129, 133 (Fla. 1934)). Where an executive order of suspension "names one or more of the grounds embraced in the Constitution and clothes or supports it with alleged facts sufficient to constitute the grounds or cause of suspension, it is sufficient." *Hardie*, 155 So. at 133. Similarly, the Senate's judgment of removal or reinstatement "is final, and will not be reviewed by the courts," as under the constitutional process for suspension and removal, the "Senate is nothing less than a court provided to examine into and determine whether or not the Governor exercises the power of suspension in keeping with the constitutional mandate." *Id.* at 134. Assuming that the office of the suspended officer falls under one of the constitutionally enumerated categories and the Governor has filed the executive order of suspension with the custodian of records, the plain language of the Constitution excludes the judiciary from involving itself in the suspension and removal process save for a limited exception.

Turning to that exception, the Constitution requires the Governor to issue an executive order of suspension "stating the grounds" of the officer's suspension. While a suspended officer may seek judicial review of an executive order of suspension to ensure that the order satisfies that constitutional requirement, the judiciary's role is limited to determining whether the executive order, on its face, sets forth allegations of fact relating to one of the constitutionally enumerated

grounds of suspension. *Id.* at 133. Thus, "[a] mere arbitrary or blank order of suspension without supporting allegations of fact, even though it named one or more of the constitutional grounds of suspension, would not meet the requirements of the Constitution." *Id.* However, where the executive order of suspension contains factual allegations relating to an enumerated ground for suspension, the Constitution prohibits the courts from examining or determining the sufficiency of the evidence supporting those facts, as the "matter of reviewing the charges and the evidence to support them is solely in the discretion of the Senate." *Id.* at 134; *see also State ex rel. Kelly v. Sullivan*, 52 So. 2d 422, 425 (Fla. 1951) ("It is the function of the Senate, and never that of the Courts, to review the evidence upon which the Governor suspends an officer in the event the Governor recommends his removal from office."). Therefore, the factual allegations in an executive order of suspension must satisfy only a low threshold under the judiciary's limited, facial review, and "if, on the whole, [the executive order] contains allegations that bear some reasonable relation to the charge made against the officer, it will be adjudged as sufficient." *Hardie*, 155 So. at 133.

Under this standard, Executive Order 19-14 satisfies our limited review. Executive Order 19-14 states that at the time of his suspension, Israel was serving as the Sheriff of Broward County, which is a "county officer" under article VIII, section 1(d) of the Florida Constitution. Executive Order 19-14 names the grounds

for Israel's suspension—neglect of duty and incompetence—and provides various factual allegations that reasonably relate to those grounds of suspension.

Israel argues, however, that article IV, section 7(a) of the Constitution limits the grounds for suspension to a *statutory* duty prescribed to his office, which he claims Executive Order 19-14 fails to identify. "[I]n construing a constitutional provision, we are not at liberty to add words that were not placed there originally or to ignore words that were expressly placed there at the time of adoption of the provision." *Pleus*, 14 So. 3d at 945. There is nothing in the plain language of article IV, section 7(a) stating that the grounds for suspending a public official are solely limited to his or her statutory duties.

Moreover, the plain and ordinary meaning of the word "duty" found in article IV, section 7(a) of the Constitution offers no support for Israel's argument. "[U]nless the text of a constitution suggests that a technical meaning is intended, words used in the constitution should be given their usual and ordinary meaning . . . . To this effect, 'a dictionary may provide the popular and common-sense meaning of terms . . . .'" *Lawnwood*, 990 So. 2d at 512 (quoting *Advisory Opinion to Governor—1996 Amendment 5 (Everglades)*, 706 So. 2d 278, 282 (Fla. 1997)). According to *Webster's Seventh New Collegiate Dictionary* 259 (1967), "duty" is defined in part as "the action required by one's position or occupation." *See also American Heritage Dictionary* 573 (3d ed. 1992) (defining "duty" as "[a]n

- 8 -

act or a course of action that is required of one by position, social custom, law, or religion").

Furthermore, in *Hardie*, this Court explained that with regard to the Governor's constitutional suspension power,

> Neglect of duty has reference to the neglect or failure on the part of a public officer to do and perform some duty or duties laid on him as such by virtue of his office or which is required of him by law. It is not material whether the neglect be willful, through malice, ignorance, or oversight. When such neglect is grave and the frequency of it is such as to endanger or threaten the public welfare it is gross.

155 So. at 132. "Incompetency . . . has reference to any physical, moral, or intellectual quality, the lack of which incapacitates one to perform the duties of his office" and "may arise from gross ignorance of official duties or gross carelessness in the discharge of them . . . [or] from lack of judgment and discretion." *Id.* at 133. A review of Executive Order 19-14 shows that it articulates factual allegations that bear a reasonable relation to the grounds of neglect of duty and incompetence as those terms are understood in their usual and ordinary meaning.

## CONCLUSION

The Constitution establishes a clear and unambiguous process for suspension and removal. The Governor may suspend for one or more of the grounds enumerated in article IV, section 7(a), and the Senate may remove or reinstate the officer pursuant to article IV, section 7(b). The Constitution reserves to the Senate

the sole responsibility for reviewing the evidence supporting the Governor's executive order of suspension, and it is the constitutional role of the Senate to consider whether the suspended officer merits removal or reinstatement. Where the suspended officer falls within one of the constitutionally enumerated categories and the Governor has filed the executive order of suspension with the state custodian of records, the judiciary's sole role in this process is limited to a facial review of the executive order of suspension to determine whether it contains allegations that bear some reasonable relation to the charge made against the officer. This is "due entirely to the fact that the Constitution itself has set up its own special court to try the matter, namely the state Senate." *Hardie*, 155 So. at 136 (Davis, C.J., concurring).

Accordingly, we find that the Governor has satisfied the constitutional requirements set forth in article IV, section 7(a) of the Constitution and has the authority to suspend Israel from the office of Sheriff of Broward County. We therefore affirm the circuit court's order denying Israel's petition for writ of quo warranto.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, LUCK, and MUÑIZ, JJ., concur.
MUÑIZ, J., concurs with an opinion, in which CANADY, C.J., and LAWSON and LUCK, JJ., concur.
LABARGA, J., concurs in result only with an opinion.

ANY MOTION FOR REHEARING OR CLARIFICATION MUST BE FILED WITHIN THREE DAYS. A RESPONSE TO THE MOTION FOR REHEARING/CLARIFICATION MAY BE FILED WITHIN TWO DAYS AFTER THE FILING OF THE MOTION FOR REHEARING/CLARIFICATION. NOT FINAL UNTIL THIS TIME PERIOD EXPIRES TO FILE A REHEARING/CLARIFICATION MOTION AND, IF FILED, DETERMINED.

MUÑIZ, J., concurring.

I concur in the majority opinion but write briefly to address the claim at the heart of Sheriff Israel's petition, *i.e.*, the assertion that the factual allegations underlying the suspension order are disconnected from Israel's statutory duties. Israel's view of those duties is far too narrow. Section 30.15(e), Florida Statutes (2018), makes sheriffs "in person or by deputy" the "conservators of the peace" in their respective counties. Relatedly, section 30.07, Florida Statutes (2018), authorizes sheriffs to appoint deputies and makes sheriffs responsible for the deputies' neglect in office. A sheriff's myriad day-to-day functions and responsibilities—including the development of policies and the training and supervision of employees—are the essential means of carrying out these overarching statutory obligations. And it requires no imagination to see the connection between these obligations and the significant performance deficiencies alleged in Executive Order 19-14. Of course, Israel is free to dispute the merits of the suspension order's factual allegations and to argue about the proper role of a governor in supervising local officials. But the appropriate forum for those debates is the Senate. It is not this Court's role to weigh the sufficiency of the evidence or

- 11 -

to second-guess the governor's exercise of a discretionary function under the Constitution.

CANADY, C.J., and LAWSON and LUCK, JJ., concur.

LABARGA, J., concurring in result only.

As the circuit court correctly noted in its order, this case presents the narrow question of whether the executive order suspending Sheriff Israel alleges facts sufficient to support the suspension on the stated grounds. While I agree that Executive Order 19-14 fulfills this requirement, I write to emphasize that our review of these matters is not *pro forma*. Indeed, executive orders suspending officials pursuant to article IV, section 7(a), of the Florida Constitution must allege specific, detailed facts which support and allow for meaningful review by the Senate. This requirement, in my view, is of paramount importance when the official in question was duly elected by the voters.[2] Furthermore, the suspension order must provide the official in question with sufficient notice of the allegations to allow the official to mount a meaningful defense.

---

2. Article IV, section 7(a) authorizes the governor to suspend from office "any state officer not subject to impeachment, any officer of the militia not in the active service of the United States, or any county officer." Accordingly, the suspension power may be applied to suspend public officials who are elected by the citizens of Florida. The office of sheriff is not subject to impeachment, and therefore a governor has the authority to suspend a sheriff pursuant to this provision, as occurred in this case.

This Court noted in *State ex rel. Hardee v. Allen*, 172 So. 222, 224 (Fla. 1937), that "[i]t is not necessary that the allegation[s] of fact be as specific as the allegations of an indictment or information in a criminal prosecution." The allegations must, however, identify the specific instances of alleged misconduct with sufficient detail to facilitate meaningful review by the Senate, by this Court when applicable, and to allow the official to mount a defense. An executive order which presents only general or conclusory allegations will not suffice. This is not a demanding standard, but it is nonetheless a substantive requirement imposed by the Florida Constitution, and this Court is obligated to vacate any suspension which does not satisfy it.

Certified Judgments of Trial Courts in and for Broward County – David Alan Haimes, Judge - Case No. 062019CA005019AXXXCE – An Appeal from the District Court of Appeal, Fourth District, Case No. 4D19-970

Benedict P. Kuehne, Michael T. Davis, and Susan Dmitrovsky of Kuehne Davis Law, P.A., Miami, Florida; and Stuart N. Kaplan of Kaplan & Parker, LLP, Palm Beach Gardens, Florida,

     for Appellant

Joe Jacquot, General Counsel, Nicholas A. Primrose, John MacIver, Colleen Ernst, and James Uthmeier, Deputy General Counsel, Executive Office of the Governor, Tallahassee, Florida,

     for Appellee