# Third District Court of Appeal

## State of Florida

Opinion filed July 7, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-1694
Lower Tribunal No. 24-793-CA-01
_____

**William Fuller, et al.,**
Appellants,

vs.

**The City of Miami, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Daryl E. Trawick, Judge.

AXS Law Group, PLLC, and Jeffrey W. Gutchess and Samuel Jacob Etkin Kramer and Jack S. Flagg, for appellants.

Dentons US LLP, and Angel A. Cortiñas, for appellee City of Miami.

Rivero Mestre LLP, and Jorge Alejandro Mestre, Alan H. Rolnick, Patricija Gregznaite, Robert J. Kuntz, Jr., and Christina M. Ceballos-Levy, for appellee Joe Carollo.

Before LOGUE, BOKOR and GOODEN, JJ.

BOKOR, J.

In 2018, William Fuller and Martin Pinilla sued City of Miami Commissioner Joe Carollo, in his individual capacity, under 42 U.S.C. § 1983. Fuller and Pinilla alleged that Carollo, under color of law, weaponized city resources and engaged in a yearslong campaign of retaliation and harassment against them and their businesses located in the City of Miami because of Fuller and Pinilla's support for Carollo's unsuccessful political opponent. After a weekslong federal jury trial, vigorously contested by Carollo, in 2023 the jury found Carollo liable and awarded Fuller and Pinilla over $63 million in compensatory and punitive damages. Relying on that federal verdict and final judgment, Fuller, Pinilla, and others sued the City of Miami and Carollo under the City of Miami Charter Citizens' Bill of Rights, seeking Carollo's removal from office. The trial court dismissed the action with prejudice. To be clear, we do not condone Carollo's shocking and egregious behavior underpinning the unanimous federal jury verdict and final judgment. But for the reasons explained below, we agree with the trial court that the appellants lack standing and the removal provision may only be invoked upon the finding of a charter violation attributable to the City.

**I.**

2

The dispute traces back to 2018, when the original plaintiffs in the action below, Fuller and Pinilla, brought a federal civil rights action under 42 U.S.C. § 1983 against Carollo in his individual capacity. That action alleged that Carollo unlawfully used his position as city commissioner to retaliate against Fuller and Pinilla for advocating in support of Carollo's political opponent. In June 2023, after a jury trial in the United States District Court for the Southern District of Florida, United States District Judge Rodney Smith entered a judgment finding Carollo liable and awarding Fuller and Pinilla a combined total of over $63 million in damages. The verdict form included express findings that Carollo intentionally violated Fuller and Pinilla's constitutional rights to free speech and assembly and that these acts were done under color of state law. But the verdict also found Carollo liable only in his individual capacity and did not make any finding that he was acting under City policy or established custom.

Pursuant to this judgment, Fuller and Pinilla sought a declaratory judgment and writ of quo warranto finding that the City was obligated to remove Carollo from office under the City of Miami Charter Citizens' Bill of Rights. The Citizens' Bill of Rights prohibits the City from violating its citizens' rights of free speech and assembly, allows residents to bring an action in the

3

circuit court to vindicate these rights, and provides that public officials found by the court to have violated these rights shall forfeit their office.

Because Fuller and Pinilla concede that they are not residents of the City, the trial court twice dismissed the complaint without prejudice due to lack of standing. In the operative second amended complaint, Fuller and Pinilla added more plaintiffs, including various Miami businesses they owned and operated, as well as an individual resident and taxpayer, Denise Galvez-Turros. As the plaintiffs asserted, Carollo's actions caused them to suffer a chilling of their own free speech rights, though they also asserted a public right to enforce the Charter regardless of whether they suffered any direct harm from the violation. Carollo and the City again moved to dismiss, and the trial court granted dismissal with prejudice. The trial court found that the plaintiffs (now appellants) lacked standing, failed to allege a special injury, and that the judgment against Carollo in his individual capacity did not support standing for a declaratory claim or confer a cause of action under the Citizens' Bill of Rights. This appeal followed.

## II.

We generally review an order dismissing a claim for declaratory judgment for abuse of discretion. See, e.g., Bloch v. Del Rey, 208 So. 3d 189, 192 (Fla. 3d DCA 2016). But "to the extent that the dismissal is based

4

upon a legal determination, our review is de novo." Id. Also, "[d]etermining whether a party has standing is a pure question of law to be reviewed de novo." Herbits v. City of Miami, 207 So. 3d 274, 281 (Fla. 3d DCA 2016) (quotation omitted). To the extent we consider the denial of the petition for quo warranto, our review is for abuse of discretion. See, e.g., Israel v. Desantis, 269 So. 3d 491, 494 (Fla. 2019).

### III.

The Citizens' Bill of Rights "guarantees the following additional rights to its Citizens," including as the third enumerated right: "Speech, Assembly and Press. The City shall not interfere with the rights: (i) of freedom of speech; (ii) of freedom of the press; (iii) to petition the government, or (iv) to peaceable assembly." City of Miami Code of Ordinances, Citizens' Bill of Rights § (A)(3). With respect to enforcement, the Citizens' Bill of Rights provides:

> Residents of the City shall have standing to bring legal actions to enforce the City Charter, the Citizens' Bill of Rights, and the Miami-Dade County Citizens' Bill of Rights as applied to the City. Such actions shall be filed in Miami-Dade County Circuit Court pursuant to its general equity jurisdiction and, if successful, the plaintiff shall be entitled to recover costs, but not attorney's fees, as fixed by the court. Any public official, or employee who is found by the court to have willfully violated this section shall forthwith forfeit his or her office or employment.

Id. § (C).

We first examine the standing of the appellants to bring suit under the Charter. The parties agree that Galvez-Turros is a "[r]esident[] of the City" for purposes of the Charter, and that Fuller and Pinilla are not. Because Fuller and Pinilla aren't residents, they have no standing to sue. Galvez-Turros meets the initial threshold of being a "resident," but she nonetheless lacks standing. This is because "[c]itizens and taxpayers lack standing to challenge a governmental action unless they demonstrate either a special injury, different from the injuries to other citizens and taxpayers, or unless the claim is based on the violation of a provision of the Constitution that governs the taxing and spending powers." Solares v. City of Miami, 166 So. 3d 887, 888 (Fla. 3d DCA 2015) (noting also that "a city charter does not rise to the level of the Florida Constitution for purposes of creating an exception to standing"); see also N. Broward Hosp. Dist. v. Fornes, 476 So. 2d 154, 155 (Fla. 1985) ("[I]n the absence of a constitutional challenge, a taxpayer may bring suit only upon a showing of special injury which is distinct from that suffered by other taxpayers in the taxing district." (quotation omitted)); Renard v. Dade County, 261 So. 2d 832, 837 (Fla. 1972) ("The interest may be one shared in common with a number of other members of the community as where an entire neighborhood is affected, but not every resident and property owner of a municipality can, as a general rule, claim such an

6

interest. An individual having standing must have a definite interest exceeding the general interest in community good share in common with all citizens.").

Here, the only appellants found by the federal judgment to have been harmed were Fuller and Pinilla, who acknowledge that they are not "residents" of the City under the Citizens' Bill of Rights. All other appellants assert standing as "citizens and taxpayers." Galvez-Turros alleges no special injury. The business entities attempt to plead special injury, but only indirectly through their association with Fuller and Pinilla. They rely on one line from the federal case finding that Carollo's acts of retaliation included "attempting to shut down [Fuller and Pinilla's], or their tenants', businesses." Fuller v. Carollo, No. 18-24190, 2024 WL 3838519, at *5 (S.D. Fla. Feb. 21, 2024). But the business entities' conclusive and, at most, derivative allegation of an injury fails to establish standing. See Alterra Healthcare Corp. v. Est. of Shelley, 827 So. 2d 936, 941 (Fla. 2002) ("In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." (quoting Powers v. Ohio, 499 U.S. 400, 410 (1991))); see also Herbits, 207 So. 3d at 283 (affirming dismissal with prejudice for lack of special injury "nexus" between alleged city charter violations and harm to plaintiffs).

7

## IV.

In examining whether Fuller and Pinilla have shown a violation of the Citizens' Bill of Rights, we emphasize the fact that the federal judgment contains no finding of liability attributable to the City. Fuller and Pinilla sued Carollo in his individual capacity. And that is the judgment they obtained. There is a separate, unresolved federal lawsuit pending against the City. Yet the appellants seek to short circuit that lawsuit and impute to the City the federal findings against Carollo in his individual capacity. But the federal judgment is not so far-reaching.

In a federal civil rights action under 42 U.S.C. § 1983, a local government may only be sued for an injury inflicted by an employee or agent "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978); see also Cuesta v. Sch. Bd. of Miami-Dade Cnty., 285 F.3d 962, 966 (11th Cir. 2002) ("A plaintiff can establish § 1983 liability by identifying that she has been deprived of constitutional rights by either an express policy or a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom and usage with the force of law." (quotation omitted)).

8

Because the federal case proceeded against Carollo in his individual capacity, there's no finding that Carollo acted according to an official policy or custom of the City.[1] So the trial court here (and the federal district judge when specifically asked) correctly declined to read a finding into the federal judgment that the jury did not make.

And the lack of such a finding against the City is fatal to the claim here. Based on a careful reading of the Citizens' Bill of Rights, a finding of liability against the City forms a prerequisite to a resident's ability "enforce the City Charter" or "the Citizens' Bill of Rights." City of Miami Code of Ordinances, Citizens' Bill of Rights § (C). We come to this conclusion by analyzing the meaning of the text at issue. See Conage v. United States, 346 So. 3d 594, 598 (Fla. 2022) (explaining that we should interpret statutory provisions "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole" (quotation omitted)).

---

[1] Fuller and Pinilla base the underlying removal action on the federal judgment against Carollo in his individual capacity under 23 U.S.C. § 1983. We have not been asked to determine, nor do we take a position on, whether there are other vehicles through which a court of competent jurisdiction could determine that the City violated its citizens' rights under the Citizens' Bill of Rights.

We first look at the text itself and then the broader context. The appellants seek Carollo's removal under a provision entitled "Remedies for violations." City of Miami Code of Ordinances, Citizens' Bill of Rights § (C). It is that provision, the appellants argue, that gives them the right to enforce the Citizens' Bill of Rights and seek Carollo's removal. We agree with the general proposition encapsulated by the plain language that "[r]esidents of the City shall have standing to bring legal actions to enforce . . . the Citizens' Bill of Rights." Id. And that same paragraph admonishes that "[a]ny public official . . . found by the court to have willfully violated this section shall forthwith forfeit his or her office or employment." Id. But focusing exclusively on that provision misses much context, not to mention divorces the remedy sought from the violation of the right claimed. And the Citizens' Bill of Rights addresses both the rights and the remedies.

So we must also examine the section of the Citizens' Bill of Rights the appellants claim Carollo willfully violated. The text of that section declares that: "The City shall not interfere with the rights: (i) of freedom of speech; (ii) of freedom of the press; (iii) to petition the government, or (iv) to peaceable assembly." Id. § (A)(3). We must give every word meaning and harmonize the provisions, wherever possible. See Giamberini v. Dep't of Fin. Servs., 162 So. 3d 1133, 1136 (Fla. 4th DCA 2015) (reiterating that "[a] statute

10

should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts" and "[a] single word or provision of a statute cannot be read in isolation" (quotation omitted)). Except for sections (A)(6)–(7), which promote certain environmental policies, the Citizens' Bill of Rights structures the rights as a limitation on the City's power or authority. While state constitutions (or municipal charters, consistent with state law) "may provide broader protections than those conferred by the United States Constitution," we find nothing in the text of section (A)(3) that provides greater rights than those conferred by the federal or state constitutions. Scott v. State, 368 So. 3d 8, 10 (Fla. 4th DCA 2023). Both the federal and state constitutional rights to free speech and expressive political activities apply not against private actors but "*against government infringement.*" Id. Nothing in the text of the Citizens' Bill of Rights would suggest any other result here. In fact, the text specifically exclaims that "[t]he City shall not interfere" with those same rights. City of Miami Code of Ordinances, Citizens' Bill of Rights § (A)(3).

That analysis, that the right protected under the Citizens' Bill of Rights is freedom from *government* infringement, leads us to our conclusion. A finding against Carollo in his individual capacity is not a finding of government infringement of the right of freedom of speech guaranteed under

the Citizens' Bill of Rights. So Carollo can't be removed for willfully violating a section that the City hasn't yet been found to have violated.[2]

**V.**

A federal jury awarded significant damages, including punitive damages, based on Carollo's acts in his individual capacity. We do not minimize that finding or its consequences. But, for the reasons explained, principles of standing and a plain reading of the Citizens' Bill of Rights compel affirmance.

Affirmed.

---

[2] We decline to address the contours and limitations of the writ of quo warranto relief as it does not impact our analysis or conclusion based on standing and textual analysis of the provision at issue.