LABARGA, J.
Petitioner Robert J. Pleus, Jr., a retired judge of the Fifth District Court of Appeal, filed a petition for writ of mandamus in this Court seeking an order compelling Governor Crist to fill the vacancy created in the Fifth District Court of Appeal by the Petitioner’s mandatory resignation.[1] The issue raised by the petition concerns the extent of the Governor’s authority in making judicial appointments under the Florida Constitution.[2] Specifically, we are called upon to decide whether the Governor must fill the vacancy created by Petitioner’s resignation with a judicial appointment from the list of nominees certified to him on November 6, 2008, and do so within sixty days of receiving that list.[3] Having reviewed the parties’ pleadings, as well as the briefs filed by Amici Curiae,'[4] and in consideration of the oral arguments, we conclude that the Florida Constitution mandates that the Governor appoint a judicial nominee within sixty days of the certification of nominees by the Judicial Nominating Commission for the Fifth Appellate District. We also conclude that, within this process, the Governor is not provided the authority under the constitution to reject the certified list and request that a new list be certified.

I. Background

The facts are not in dispute. Petitioner tendered his resignation as judge of the Fifth District Court of Appeal to the Governor on September 2, 2008, to become effective on January 5, 2009. Having accepted the Petitioner’s letter of resignation, the Governor requested that the Judicial Nominating Commission for the Fifth *943 Appellate District (hereinafter “JNC”) provide him with a list of qualified applicants. A total of twenty-six applicants sought the appointment. The JNC reviewed the applications and conducted interviews. On November 6, 2008, the JNC certified to the Governor a list of six nominees for appointment to the Fifth District Court of Appeal.
In a letter dated December 1, 2008, the Governor advised the JNC Chair that he was rejecting the certified list of nominees. In the interest of diversity in the courts, the Governor requested that the JNC reconvene to consider the applications of three African-Americans who had applied to fill the vacancy. The JNC met to consider the Governor’s request, and resubmitted the original list of nominees to the Governor. The Governor has not filled the vacancy to date.

II. History and Intent of Article V, Section 11(c), Florida Constitution

Article V, section 11(c), governs the time periods applicable to judicial nominating commissions in nominating judicial applicants to fill vacancies and to the governor in making judicial appointments. That provision of the constitution expressly requires the following: “The nominations shall be made within thirty days from the occurrence of a vacancy unless the period is extended by the governor for a time not to exceed thirty days. The governor shall make the appointment within sixty days after the nominations have been certified to the governor.”
In the past, we have discussed at length the origin and purpose of article V, section 11, of the Florida Constitution, explaining the restraints the constitutional provision places on the Governor’s appointment power:
In the deliberations of the Florida Constitutional Revision Commission, it was proposed that judicial nominating commissions be created to screen applicants for judicial appointments within their respective jurisdictions and to nominate the three best qualified persons to the Governor for his appointment. The commissions tuere to be an arm of the executive appointive power to supplant, at least in part, the Governor’s so-called “patronage committee” composed of political supporters, to insure that politics would not be the only criteria in the selection of judges, and to increase generally the efficiency of the judicial appointive process.
[[Image here]]
... [T]he judicial nominating commissions [of the Revised Article V of the Florida Constitution, effective January 1, 1973] are elevated to constitutional stature and permanence. The process of non-partisan selection has been strengthened even further because nominations made by the judicial nominating commissions have now been made binding upon the Governor, as he is under a constitutional mandate to appoint “one of not fewer than three persons nominated, by the appropriate judicial nominating commission. ” Moreover, the Governor must make the appointment within sixty days after the nominations have been certified, to him. Fla. Const., art. V (Rev.), § 11(a), F.S.A. However, this same provision confers upon the Governor the express power to make the final and ultimate selection by appointment.
[[Image here]]
... The pyrpose of the judicial nominating commission is to take the judiciary out of the field of political patronage and provide a method of checking the qualifications of persons seeking the office of judge. When the commission has completed its investigation and *944 reached a conclusion, the persons meeting the qualifications are nominated. In this respect the commissioners act in an advisory capacity to aid the Governor in the conscientious exercise of his executive appointive power.
[[Image here]]
This appointive power is diluted by the Constitution to the extent that a nomination must be made by the appropriate commission, unrestrained by the influence of the Governor. To allow the Governor to guide the deliberations of the commissions by imposing rules of procedure could destroy its constitutional independence. This does not preclude him from making recommendations concerning rules.
Seeking to remove some of the discretion of the Governor’s office in the appointment of judicial officers is an apparent goal of the people which can best be attained by providing discretion to their commissions to promulgate rules of procedure for their hearings and findings, independent of any of the three standard recognized divisions of state government. While the function of the commissions is inherently executive in nature, the mandate for the commissions comes from the people and the Constitution, not from the Legislature, the Governor, or the Courts.
In re Advisory Opinion to the Governor, 276 So.2d 25, 28-30 (Fla.1973) (emphasis added) (citation omitted).
Similarly, in Spector v. Glisson, 305 So.2d 777 (Fla.1974), we restated the objective that underlies displacing sole executive prerogative from the judicial appointment process:
The nominating commission process in § 11 of Art. V is really a restraint upon the Governor — not a new process for removing from the people their traditional right to elect their judges as provided in the basic, preceding § 10 of Art. V. One of the principal purposes behind the provision for a nominating commission in the appointive process was — not to replace the elective process — but to pla,ce the restraint upon the “pork barrel” procedure of purely political appointments without an overriding consideration of qualification and ability. It was sometimes facetiously said in former years that the best qualification to become a judge was to be a friend of the Governor! The purpose of such nominating commission, then, was to eliminate that kind of selection which some people referred to as “picking a judge merely because he was a friend or political supporter of the Governor” thereby providing this desirable restraint upon such appointment and assuring a “merit selection” of judicial officers.
Id. at 783 (emphasis added).
III. Discussion
 “The interpretation of the Florida Constitution is a question of law” for the Court. Jackson-Shaw Co. v. Jacksonville Aviation Authority, 8 So.3d 1076, 1084-85 (2008). In interpreting the constitution, our analysis is straightforward. We begin with an examination of the explicit language of article V, section 11(c). “If that language is clear, unambiguous, and addresses the matter in issue, then it must be enforced as written.” Lawnwood Med. Ctr., Inc. v. Seeger, 990 So.2d 503, 511 (Fla.2008) (quoting Fla. Soc’y of Ophthalmology v. Fla. Optometric Ass’n, 489 So.2d 1118, 1119 (Fla.1986)). “Our goal in construing a constitutional provision is to ascertain and effectuate the intent of the framers and voters.” Id. at 510. As we have previously explained:
The fundamental object to be sought in construing a constitutional provision *945 is to ascertain the intent of the framers and the provision must be construed or interpreted in such manner as to fulfill the intent of the people, never to defeat it. Such a provision must never be construed in such manner as to make it possible for the will of the people to be frustrated or denied.
Ford v. Browning, 992 So.2d 132, 136 (quoting Crist v. Fla. Ass’n of Crim. Defense Lawyers, 978 So.2d 134, 140 (Fla.2008)). We remain mindful that in construing a constitutional provision, we are not at liberty to add words that were not placed there originally or to ignore words that were expressly placed there at the time of adoption of the provision. See Lawnwood, 990 So.2d at 512.
With these principles in mind, we turn to the language of article V, section 11(c), of the Florida Constitution:
(c) The nominations [for judicial office] shall be made within thirty days from the occurrence of a vacancy unless the period is extended by the governor for a time not to exceed thirty days. The governor shall make the appointment within sixty days after the nominations have been certified to the governor.
Art. V, § 11(c), Fla. Const, (emphasis added). The plain language of article V, section 11(c), mandates that the Governor, upon receipt of the certified list of nominees from a judicial nominating commission, make an appointment from that list within sixty days to fill the judicial vacancy. Significantly, in addition to the mandatory language that is expressly stated in the provision, we note the absence of any language granting the Governor authority to reject the JNC’s certified list of nominees or to extend the time in which the appointment for judicial office must be made. Cases such as In re Advisory Opinion to the Governor and Spector provide ample historical support for this interpretation.
Petitioner Pleus has sought mandamus relief in this Court. To be entitled to mandamus relief, “the petitioner must have a clear legal right to the requested relief, the respondent must have an indisputable legal duty to perform the requested action, and the petitioner must have no other adequate remedy available.” Huffman v. State, 813 So.2d 10, 11 (Fla.2000). Based upon our foregoing analysis, we hold that article V, section 11(c), imposes a clear and indisputable legal duty upon the Governor in his exercise of appointing judicial nominees to act within sixty days of receiving the certified list of nominees. Petitioner, as a citizen and taxpayer, has a clear legal right to request that the Governor carry out that duty. See Chiles v. Phelps, 714 So.2d 453, 456 (Fla.1998). In so holding, we reject the proposition that the Governor’s failure to act within the mandated time frame obviates that duty. To hold otherwise would render the constitutional provision nugatory.
We also reject the argument that mandamus does not lie because the appointment process is an executive function that is inherently discretionary. By allowing this mandamus proceeding, we do not direct the Governor’s discretionary decision as to the actual appointment to fill the judicial vacancy. Rather, we simply recognize and enforce the mandate contained in article V, section 11, which requires the Governor to adhere to his duty to make an appointment within the mandated time frame from the certified list of nominees. We recognize that, in fulfilling this constitutional duty, the Governor has discretion in his selection of a nominee from the list.
Finally, we reject the argument that an action for declaratory judgment in the circuit court is an adequate legal reme *946 dy under the facts and circumstances of this case, thus requiring denial of mandamus in this Court. As the Court stated in In re Advisory Opinion to the Governor (Judicial Vacancies), 600 So.2d at 462, “[vjacaneies in [judicial] office are to be avoided whenever possible. We are confident that the framers of article V intended that the nominating and appointment process would be conducted in such a way as to avoid or at least minimize the time that vacancies exist.” In this case, the passage of almost six months since the petitioner’s resignation became effective warrants our decision, now, in this mandamus proceeding in order to effectuate the intent of the framers to avoid or minimize further delay in filling this judicial vacancy. Moreover, while we applaud the Governor’s interest in achieving diversity in the judiciary — an interest we believe to be genuine and well-intentioned — the constitution does not grant the Governor the discretion to refuse or postpone making an appointment to fill the vacancy on the Fifth District Court of Appeal.[5]

CONCLUSION

We conclude that the Governor is bound by the Florida Constitution to appoint a nominee from the JNC’s certified list, within sixty days of that certification. There is no exception to that mandate. Therefore, we hold that under the undisputed facts and specific circumstances present in this case, the Governor lacks authority under the constitution to seek a new list of nominees from the JNC and has a mandatory duty to fill the vacancy created by Petitioner’s retirement with an appointment from the list certified to him on November 6, 2008. Because we believe the Governor will fully comply with the dictates of this opinion, we grant the petition but withhold issuance of the writ.
It is so ordered.
QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, and PERRY, JJ., concur.

. Article V, section 8, of the Florida Constitution provides, in pertinent part, that "[n]o justice or judge shall serve after attaining the age of seventy years except upon temporary assignment or to complete a term, one-half of which has been served." Petitioner has served on the Fifth District Court of Appeal as a senior judge since his retirement.

. This case does not involve any claim that the process for the selection of the nominees was tainted by impropriety or illegality. Our decision in this case should not be understood to suggest that no remedy would be available to address such a tainted process.

. We have jurisdiction. See art. V, § 3(b)(8), Fla. Const.

. Amicus briefs were filed, with leave of Court, by the Appellate Practice Section of The Florida Bar, the Central Florida Association for Women Lawyers, and the Florida State Conference of Branches of the National Association for the Advancement of Colored People.

. It should be noted that the Legislature has also addressed the interest of diversity in the judicial nominating process in section 43.291(4), Florida Statutes (2008). That section provides that the Governor, in appointing members of each judicial nominating commission, "shall seek to ensure that, to the extent possible, the membership of the commission reflects the racial, ethnic, and gender diversity, as well as geographic distribution, of the population within the territorial jurisdiction of the court for which nominations will be considered." § 43.291(4), Fla. Stat. (2008).