# Supreme Court of Florida

_____

No. SC20-985
_____

**REPRESENTATIVE GERALDINE F. THOMPSON,**
Petitioner,

vs.

**GOVERNOR RON DESANTIS, et al.,**
Respondents.

August 27, 2020

MUÑIZ, J.

Representative Geraldine Thompson wants us to undo Governor Ron DeSantis's appointment of Judge Renatha Francis to fill a vacancy in office on this Court. Thompson argues that the Florida Constitution requires Judge Francis to have been a member of the Florida Bar for ten years at the time of the appointment, which Judge Francis undisputedly was not. Thompson asks us to invalidate the appointment, require the judicial nominating commission to certify a new list of candidates, and order the Governor to appoint someone from the new list.

The Governor did exceed his authority in making this appointment. In a nutshell, when a governor fills by appointment a vacant judicial office, the

appointee must be constitutionally eligible for that office at the time of the appointment.[1] But that is not the end of the analysis, because the remedy Thompson seeks is legally unavailable under these circumstances. There is no legal justification for us to require a replacement appointment from a new list of candidates, rather than from the one that is already before the Governor. And the correct remedy (an appointment from the existing list of eligible nominees) would be contrary to Thompson's stated objectives in filing this case. Therefore, we hold Thompson to the remedy she requested and deny her petition.

## I. BACKGROUND

Former Justices Barbara Lagoa and Robert Luck resigned from this Court in November 2019. As mandated by article V, section 11(c), the Supreme Court Judicial Nominating Commission then carried out the process of selecting nominees to replace the outgoing justices. On January 23, 2020, the JNC certified to the Governor a total of nine nominees for the two vacancies. It is undisputed that this started the clock running on the Governor's duty under article V, section 11(c) to fill the vacancies by appointment "within sixty days after the nominations have been certified."

---

1. Throughout this opinion, when we refer to the "time of the appointment" or the "date of the appointment," we mean the time or date when the appointment takes effect.

Because he was focused on the COVID-19 pandemic and in light of the declared state of emergency, the Governor delayed his appointments beyond the constitutional deadline of March 23, 2020.[2] Then, on May 26, 2020, the Governor appointed John Couriel and Judge Renatha Francis to the offices of justice of the supreme court.[3] The Couriel appointment is not at issue in this case.

The Petitioner filed an "Emergency Petition for Writ of Quo Warranto and Writ of Mandamus" in this Court on July 13, 2020. The petition seeks relief against Supreme Court JNC Chair Daniel Nordby and Governor Ron DeSantis in their official capacities. The factual basis for the petition is that, on the date of her appointment, Judge Francis had not been a member of the Florida Bar for the preceding ten years. It is undisputed that Judge Francis will not have attained ten years' Bar membership until September 24, 2020. The Petitioner alleges that

---

2. We express no view on whether the state of emergency made it permissible for the Governor to miss the constitutional deadline.

3. The parties dispute the validity of Judge Francis's appointment, but they agree that the Governor has in fact made an appointment, effective on May 26, 2020, even though no commission has been issued. The Governor's response is replete with representations that he has "appointed" Judge Francis to the Court, not merely announced his selection of Judge Francis. And the response asserts that, "[u]pon appointment, the Governor has met his constitutional obligations under Article V." Specifically with regard to the Petitioner's request for mandamus relief, the Governor's response says that "Governor DeSantis completed his legal duty by appointing Judge Francis . . . to the Florida Supreme Court on May 26, 2020." For purposes of our analysis, we will take the case as it has been argued to us and assume that the Governor has in fact made an appointment.

article V, section 8 requires Judge Francis to have been a member of the Bar for at least ten years as of the date of her appointment, and that accordingly the JNC's nomination and the Governor's appointment of her are invalid.

As to the JNC, the Petitioner seeks a "writ of quo warranto specifically concluding that the JNC exceeded its legal authority by including Judge Francis on the list of certified nominees." The Petitioner also seeks a "writ of mandamus compelling the JNC to immediately provide Governor DeSantis with a new list of nominees." The Petitioner asks that the candidates for inclusion on the revised list be limited to those who originally applied to fill the Lagoa and Luck vacancies and who were "constitutionally eligible to hold the office as of January 23, 2020, the date the JNC was originally required to certify its list of nominees to Governor DeSantis." Based on a concern for diversity in the judiciary, the Petitioner urges the JNC to "strongly consider" including on its revised list the six African-American candidates in the original applicant pool. The Petitioner argues that this remedy is warranted because "the entire process for filling the vacancy in question was corrupted by the JNC including an ineligible nominee" on its certified list.

As to the Governor, the Petitioner seeks a writ of quo warranto establishing that the appointment of Judge Francis exceeded the Governor's constitutional authority. The Petitioner further asks for a writ of mandamus ordering the

- 4 -

Governor to "immediately appoint" one of the individuals from the JNC's "new list."

In the analysis that follows, we will consider the Petitioner's claims for relief against the Governor, but not her claims against Chair Nordby. The Petitioner asserts that the JNC violated its procedural rules and the constitution by including Judge Francis on its list of nominees—an alleged defect that was immediately apparent on January 23, 2020. Nonetheless, the Petitioner waited nearly six months to bring this action. It would not be proper under these circumstances for us to entertain a challenge to the JNC's list of nominees. *See State ex rel. Pooser v. Wester*, 170 So. 736 (Fla. 1936) (petitioner's unreasonable four-month delay precluded grant of extraordinary relief).

## II. ANALYSIS

### A. Standing

It is undisputed that article V, section 3(b)(8) gives this Court discretionary jurisdiction to issue writs of mandamus and quo warranto to state officers. Nonetheless, the Governor argues that the Petitioner lacks standing to bring this action "because she alleges no direct and articulable stake in the outcome of this"

proceeding. The Petitioner responds that she has standing as a citizen and taxpayer.[4]

This Court's precedent favors the Petitioner. For example, the petitioner in *Whiley v. Scott*, 79 So. 3d 702, 705 (Fla. 2011), sought a writ of quo warranto to establish that an executive order suspending certain agency rulemaking exceeded the governor's constitutional authority. As to standing, a majority of the Court held that "the extent of harm to the petitioner is not pertinent." *Id*. at 706 n.4. Suggesting that the case involved the vindication of a "public right," the majority held that "when bringing a petition for writ of quo warranto, individual members of the public have standing as citizens and taxpayers." *Id*. Similarly, in *Pleus v. Crist*, 14 So. 3d 941 (Fla. 2009), the Court unanimously found that the petitioner had standing as a "citizen and taxpayer" to seek mandamus relief compelling the governor to comply with his constitutional duty to fill a judicial vacancy. *Id*. at 945. We observed that mandamus relief was necessary "in order to effectuate the intent of the framers to avoid or minimize further delay in filling" the vacant office. *Id*. at 946.

Our Court recently addressed the issue of stare decisis in *State v. Poole*, 45 Fla. L. Weekly S41 (Fla. Jan. 23, 2020), *clarified* 45 Fla. L. Weekly S121 (Fla.

---

4. The Petitioner also asserts standing in her capacity as a member of the Florida Legislature, but we fail to see how this case has anything to do with the Petitioner's legislative duties.

Apr. 2, 2020). There we held: "When we are convinced that a precedent clearly conflicts with the law we are sworn to uphold, precedent normally must yield." *Id*. at S48. In this case, to justify departing from the principle of stare decisis, we would have to conclude that our relevant precedents clearly erred in their understanding of the "judicial power" vested in Florida's courts by article V, section 1.

We will not lightly conclude that precedents of this Court are clearly erroneous. Based on our review of the arguments and analysis that have been presented to us, we cannot say that the Respondents have shown that the clearly erroneous standard is met here. We must therefore adhere to precedent and find that the Petitioner has standing.

## B. Merits

Article V, section 8 says that "[n]o person is eligible for the office of justice of the supreme court . . . unless the person is, and has been for the preceding ten years, a member of the bar of Florida." This case requires us to decide when this eligibility requirement attaches in the context of a governor's appointment to fill a vacancy in judicial office under article V, section 11. The Petitioner argues that the eligibility requirement attaches at the time of appointment. The Governor responds that the eligibility requirement does not attach until the appointee actually takes the oath and assumes the duties of her office. According to the Governor,

because Judge Francis does not intend to take the oath and assume office until September 24, 2020, "eligibility is not material, nor is it in question."

The plain text of article V, section 8—with its bare reference to eligibility "for the office of justice of the supreme court"—does not explicitly resolve the parties' dispute. But the constitution nonetheless yields a clear answer to the question before us. That is because, "in construing multiple constitutional provisions addressing a similar subject, the provisions 'must be read in pari materia to ensure a consistent and logical meaning that gives effect to each provision.' " *Zingale v. Powell*, 885 So. 2d 277, 283 (Fla. 2004) (quoting *Caribbean Conserv. Corp. v. Fla. Fish & Wildlife Conserv. Comm'n*, 838 So. 2d 492, 501 (Fla. 2003)). When we read Article V, section 8 together with article V, section 11, the only reasonable conclusion is that the Bar eligibility requirement attaches at the time of appointment.[5]

When a vacancy arises in the office of justice of the supreme court, article V, section 11 imposes on the governor a simple and circumscribed duty: (1) to "fill the vacancy" in office, (2) by "appointment," (3) "within sixty days after the [JNC's] nominations have been certified to the governor." Under this provision, the appointment is a means to an end—to fill the vacancy—not an end in itself.

_____

5. Again, by this we mean the time or date when the appointment becomes effective.

- 8 -

The text indicates that the appointment brings about clear legal effects: it fills the vacancy in office, and it sets the length of the appointee's term.[6] We also can infer a legal effect from the fact that the text imposes a deadline for the appointment; if the appointment itself had no legal effect, the deadline would serve no purpose.

The most important point is that the appointment must—and does—fill the vacancy in office. And it does so immediately. Not at some time in the future, but on the effective date of the appointment itself. It necessarily follows that, in this context, any constitutional eligibility requirement "for the office" attaches at the time of appointment. Otherwise, the governor would be filling an office—again, under article V, section 11 this happens at the time of appointment—with someone whom the constitution deems ineligible for that office.

The Governor's representatives oppose this straightforward interpretation with an argument that is untenable. They contend that the constitution demands only that an appointee meet the constitutional eligibility requirements prior to the end of her term (the beginning of which, they maintain, is unconnected to the date of the appointment). And they acknowledge that their interpretation yields a startling result: notwithstanding its 60-day appointment deadline, the constitution would permit a legally "filled" judicial office to remain empty for over three years,

_____

6. Article V, section 11(a) says that the appointment is "for a term ending on the first Tuesday after the first Monday in January of the year following the next general election occurring at least one year after the date of appointment."

while the governor, the court, and the public wait for the appointee to meet the constitution's eligibility requirements. This implausible reading of the relevant constitutional provisions conflicts with the "presumption against ineffectiveness" canon, which "ensures that a text's manifest purpose is furthered, not hindered." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 63 (2012).

The Governor's advocates support their interpretation with a couple of unpersuasive text-based arguments. The first is that "a reasonable person would understand 'eligible for the office' to mean one must meet certain requirements prior to assuming the office and exercising the duties." The problem with this argument is that the hypothetical reasonable person would have to read the phrase "eligible for the office" not in isolation, but together with the related provisions in article V, section 11. And the reasonable person would then see that, because a governor's appointment has the effect of *filling the office*, the appointee must be eligible for that office at the time of appointment.

The second textual argument points out that other provisions in article V explicitly refer to the time of appointment. Article V, section 3(a) imposes a residency requirement "at the time of the original appointment or election." Article V, section 11(a) sets the length of an appointee's term partly in relation to "the date of appointment." And article V, section 8 itself includes the phrase "a

person shall be eligible for election or appointment to the office of county court judge."[7]  In light of the existence of these other provisions, the Governor urges us to infer that the article V, section 8 Bar eligibility requirement does not attach at the time of appointment.

It is true that one canon of construction holds that "a material variation in terms suggests a variation in meaning."  Scalia & Garner, *Reading Law* at 170. Here it is not clear that the Governor has identified a "material" variation in terms, because the relatively vague phrase "eligible for the office" is being compared to relatively more specific phrases used elsewhere.  And, as we have noted, the bare phrase "eligible for the office" does not explicitly speak to the time of attachment. But even if we assume that the Governor has identified material variations in terms, this canon comes with a warning sign: "Because it is so often disregarded, this canon is particularly defeasible by context."  *Id*. at 171.  Here the contextual clues overwhelmingly cut against the interpretation advanced on the Governor's behalf.  We would require much more clarity from the constitutional framers to justify an interpretation that is not compelled by the text and that produces such anomalous results.

---

7. This phrase was added to the text of article V, section 8 years after the Bar eligibility requirement for supreme court justices.  *See* art. V, § 8, Fla. Const. (1968), *amended by* Fla. SJR 52-D (1971), and Fla. HJR 37 (1984).

Looking for support in our case law, the Governor relies principally on *Miller v. Mendez*, 804 So. 2d 1243 (Fla. 2001), which arose in a different context—a judicial election rather than the filling of a vacancy in judicial office under article V, section 11. In *Miller* we confronted the question whether residence for purposes of meeting the article V, section 8 residence eligibility requirement "refers to residence at the time of qualifying [for election] or residence at the time of assuming office." *Id*. at 1243-44. We answered that the residency requirement attaches "on the date of assuming office," which our opinion clearly equated with "the day the term of office begins." *Id*. at 1247. We based our decision not on any close textual analysis, but on deference to prior advisory opinions of our Court (also not text-based) and to administrative agency opinion letters that we deemed "reasonable." *Id*. A majority of the Court joined a concurrence by Justice Wells concluding that, while precedent dictated the main opinion's result, if writing on a "clean slate" he would "hold the residency requirement to be at the time of filing." *Id*.

Applying the principle underlying *Miller* to the appointment context, we think the case supports our view that the article V, section 8 Bar membership requirement attaches at the time of appointment. Elected officers, including judges, are generally elected for terms that begin on a fixed date set in advance by law. *See In re Advisory Opinion to the Governor—Terms of County Court Judges*,

- 12 -

750 So. 2d 610, 613 (Fla. 1999). Before the start of an elected judge's term, the judge has not in any sense filled the office. By contrast, an appointment under article V, section 11 fills a vacancy in judicial office immediately at the time of appointment. And, just as the law fixes in advance the start of an elected judge's term, Article V, section 11 imposes a hard deadline on a governor's duty to fill a vacant judicial office. If we assume that the Governor is correct that the term of office of an appointed justice can start anytime between the date of appointment and the end of the justice's initial term, then the date of appointment is far more closely analogous to the beginning date of an elected judge's term. As we have pointed out before, to conclude otherwise would strip the article V, section 11 appointment deadline—and the appointment itself—of any legal and practical significance.

We conclude our analysis of the merits by restating first principles. The goal of constitutional interpretation is to arrive at the fair meaning of the constitutional text. We ask how a reasonable member of the public would have understood the text at the time of its enactment. Here a reasonable member of the public would have understood that a governor's appointment carries legal significance, that an office can only be filled by a person eligible for that office, and that a hard 60-day appointment deadline would be fatally undermined by a rule that permits a judicial seat to remain empty for more than three years. We believe

that ours is the only reasonable interpretation of article V, sections 8 and 11, one that honors the whole text and "furthers rather than obstructs the document's purpose."  Scalia & Garner, *Reading Law* at 63.  After all, "our role [is] to make sense rather than nonsense out of the *corpus juris*."  *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 101 (1991).

## C.  Remedy

It is not enough for the Petitioner to establish that the Governor exceeded his authority by appointing Judge Francis.  To prevail in this action, the Petitioner also must have sought proper relief.  This is where the Petitioner's case fails.

There are two insurmountable problems with the Petitioner's requested remedy.  First, as we have explained, by her unexcused delay the Petitioner has forfeited any challenge to the composition of the JNC's list or to the JNC's nomination process.  And second, the Petitioner has shown no reason why the irregularity of one ineligible nominee on the JNC's certified list requires discarding the whole list.  As noted, that list already includes more than the minimum number of candidates that article V, section 11(a) requires.  At this point, the only legally appropriate and available remedy would be to require the Governor immediately to appoint a constitutionally eligible person from the JNC's existing certified list of nominees.  *See Pleus*, 14 So. 3d at 946.

- 14 -

Yet in her initial petition and in her reply, the Petitioner has asked for something else: that the JNC reconvene and certify a new list from the existing applicant pool, and that the Governor then be compelled to select an appointee from that new list. The Petitioner's filings characterize this as "the only remedy that complies with the Florida Constitution" and as "the only appropriate and fair remedy in this case." What the Petitioner seeks is fundamentally different from the remedy that we are authorized to grant in the circumstances presented. And more than that, the authorized remedy would defeat the Petitioner's stated objectives in filing this action.

It is not our role to impose a remedy that the Petitioner has not requested and that is inconsistent with the Petitioner's stated goals. This is the parties' case, not ours. Accordingly, we must deny the petition.

## CONCLUSION

The petition is denied.

It is so ordered.

CANADY, C.J., and LABARGA and LAWSON, JJ., concur.
LABARGA, J., concurs specially with an opinion.
POLSTON, J., concurs in result only with an opinion.
COURIEL, J., recused.

ANY MOTION FOR REHEARING OR CLARIFICATION MUST BE FILED ON OR BEFORE MONDAY, AUGUST 31, 2020. A RESPONSE TO THE MOTION FOR REHEARING/CLARIFICATION MUST BE FILED ON OR BEFORE FRIDAY, SEPTEMBER 4, 2020. NOT FINAL UNTIL THE TIME

EXPIRES TO FILE A REHEARING/CLARIFICATION MOTION AND, IF FILED, DETERMINED.

LABARGA, J., specially concurring.

I fully concur with the majority's conclusion that Governor DeSantis exceeded his constitutional authority in appointing a nominee, Judge Francis, who was not constitutionally eligible at the time of the appointment. I write only to underscore two points. First, the Supreme Court Judicial Nominating Commission (Supreme Court JNC) also exceeded its authority in nominating Judge Francis. Second, petitioner Thompson's concerns relating to a diverse judiciary are only highlighted by the Supreme Court JNC's failure to certify any of the six constitutionally eligible African-American or Caribbean-American applicants.

## I. The Supreme Court JNC Exceeded Its Authority

Pursuant to article V, section 11 of the Florida Constitution, "[u]niform rules of procedure *shall be established* by the judicial nominating commissions at each level of the court system." (Emphasis added.)[8] Consistent with its constitutional mandate, the Supreme Court JNC established rules of procedure which in relevant part, state as follows: "Within a reasonable time after the deadline for applications, the Commission shall meet to consider the applicants and to select applicants for

_____

8. Article V, section 11(d) provides for a Supreme Court JNC, a JNC for each of Florida's five district courts of appeal, and a JNC for each of Florida's twenty judicial circuits.

- 16 -

further investigation and consideration.  *No person shall be selected for further investigation and consideration who does not meet all legal requirements for the office to be filled.*"  Section II, *Initial Screening*, Supreme Court Nominating Commission Rules (emphasis added).  Moreover, "*no applicant shall be nominated to the Governor* or to the Attorney General *for appointment unless the Commission finds the applicant to be fit for appointment* after full and careful consideration. The Commission's consideration of applicants for appointment *shall include . . . [a]pplicable constitutional and statutory criteria.*"  Section V(a), *Standards and Qualifications*; *Criteria*, Supreme Court Nominating Commission Rules (emphasis added).

As the Supreme Court JNC carries out its role in nominating applicants to fill a vacancy in the office of justice of this Court, it cannot do so in a manner that is irrespective of the Governor's duty to appoint a constitutionally eligible candidate.  Under article V, section 11(a) of the Florida Constitution, "the governor *shall fill* the vacancy by appointing . . . one of not fewer than three persons nor more than six persons nominated by the appropriate judicial nominating commission."  "No person is eligible for the office of justice of the supreme court or judge of a district court of appeal unless the person *is, and has been for the preceding ten years, a member of the bar of Florida.*"  Art. V, § 8, Fla. Const. (emphasis added).

Because the Governor's appointee must satisfy this minimal eligibility requirement, the Supreme Court JNC is obligated to nominate only individuals who fulfill the requirement. A nominee must be constitutionally eligible at the time of nomination. The reason for this is clear: while the Governor has up to sixty days to fill the vacancy, the Governor does not have to utilize that entire time period. Each nominee must be immediately ready to fill the vacancy.

On January 23, 2020—the date that the Supreme Court JNC certified its list of nominees to the Governor—not only was Judge Francis constitutionally ineligible to fill a vacancy on this Court, fully eight months remained until she would meet the ten-year requirement. As a result, the Supreme Court JNC's nomination exceeded its authority.

Not only is this interpretation consistent with article V, it is consistent with how the members of Florida's JNCs are educated regarding the constitutional eligibility of appellate court applicants. During a training session mere weeks before the Lagoa and Luck vacancies occurred, one of the panel members acknowledged the "bar" of ten years to be eligible to serve as an appellate court judge in Florida. *See* Judicial Nominating Commission Training, at the 2:07:37 mark, available at www.thefloridachannel.org/videos/10-21-19-judicial-nominating-commission-training/, last visited August 21, 2020.

- 18 -

Thus, although the majority concludes that Thompson's Supreme Court JNC claims were untimely, it is nonetheless clear that the Supreme Court JNC also exceeded its authority in nominating a constitutionally ineligible applicant.

## II.  The Supreme Court JNC Had a Diverse Slate of Constitutionally Eligible Candidates From Which to Choose

Thompson's requested remedy—requiring the Governor to appoint a candidate from the original list of applicants—is motivated by a "widely-recognized interest in diversity on the judiciary."  Pet. at 4.  While I agree with the majority that there is no legal basis for granting this remedy, I write to underscore the missed opportunity to enhance the diversity of this Court and to do so in a manner that adheres to the Florida Constitution.  The original pool of applicants to the Supreme Court JNC included a generous slate of diverse applicants who were constitutionally eligible to fill the Lagoa and Luck vacancies.  In particular, the list of applicants included six constitutionally eligible African-American or Caribbean-American applicants.  Each of these six applicants is an experienced attorney who, at the time of application, had no fewer than twenty-one years of Florida Bar membership.  In fact, the most experienced of the six was a member of the Florida Bar for thirty-six years at the time of application.  Instead, the Supreme Court JNC nominated the only African-American or Caribbean-American applicant who was constitutionally ineligible to fill either vacancy.

- 19 -

POLSTON, J., concurring in result only.

Representative Thompson filed a petition seeking a writ of quo warranto and a writ of mandamus. At the heart of the petition for both writs is her specifically requested relief seeking to compel the JNC to certify a new list of nominees (with strong consideration of the other African-American applicants who had originally applied) and to compel the Governor to appoint an individual from that new list. Because this relief cannot be granted and her petition does not include a request for any other relief that the Court deems appropriate in its discretion, the petition must be denied. Moreover, the petition for a writ for quo warranto must be denied because the Governor has not yet issued a commission for Judge Francis, the official act of appointment. Although the Governor does not have the authority to appoint someone ineligible, he has not yet done so by announcing Judge Francis as his selection.

Although Representative Thompson could have filed a mandamus petition to require the Governor to immediately appoint someone else from the existing certified list, because he is outside the constitutionally mandated time period to do so, she chose to not do so. We cannot make this case into something it is not by providing a remedy not requested. Accordingly, I concur in result only to deny this petition.

# I.  ANALYSIS

Article V, section 8 of the Florida Constitution sets forth the following

eligibility requirements for justices of this Court:

> No person shall be eligible for office of justice or judge of any court
> unless the person is an elector of the state and resides in the territorial
> jurisdiction of the court.  No justice or judge shall serve after attaining
> the age of seventy-five years except upon temporary assignment.  *No
> person is eligible for the office of justice of the supreme court or judge
> of a district court of appeal unless the person is, and has been for the
> preceding ten years, a member of the bar of Florida.*

(Emphasis added.)

Here, it is undisputed that Judge Francis will not meet the eligibility

requirement of having been a member of the Florida Bar for the preceding 10 years

until September 24, 2020.  However, I would deny Representative Thompson's

writ petition because the challenge to the composition of the JNC's list for 2

vacancies is now moot, because the petition fails to demonstrate that the Governor

has exceeded his authority, and because the petition fails to establish that the JNC

and the Governor have clear and indisputable duties to perform the requested

actions.[9]

---

9.  The Respondents invite this Court to revisit and clarify our precedent
regarding standing and jurisdiction in extraordinary writ proceedings, but I would
decline to do so at this time.

## A.  JNC List

Although the petition focuses primarily upon Judge Francis' inclusion on the JNC list certified to the Governor, Representative Thompson's challenge involves the composition of the entire list and the whole process.  For example, the petition states that "the entire process for filling the vacancy in question was corrupted by the JNC including an ineligible nominee on the list of individuals it certified to the Governor."  And in the motion to disqualify Justice Couriel from this case, Representative Thompson reiterates that the petition "challenges the legality of the process which resulted in Justice Couriel being appointed to the Florida Supreme Court."

To the extent the petition challenges the composition of the JNC list for the 2 vacancies, I conclude that the issue is moot.  *Cf. Tyler v. Peacock*, 124 So. 463, 464 (Fla. 1929) (dismissing the case because the issue of whether the county commissioners should be prohibited from placing a particular name on the ballot for the office of county judge was moot after the election); *Gill v. City of N. Miami Beach*, 156 So. 2d 182, 182 (Fla. 3d DCA 1963) ("Inasmuch as the election sought to be enjoined has already been held, the issues presented by this appeal have become moot.").  Justice Couriel has since assumed office and participated in cases.  To be clear, there is no dispute regarding Justice Couriel's constitutional eligibility to hold office.  Allowing citizen taxpayers to attack the composition of a

list of nominees after judges are seated and deciding cases would undermine the judiciary and the interests of justice.[10]

Furthermore, this is not a situation where a JNC certified a list and then a governor selected from that list very quickly, leaving one without opportunity to challenge the JNC's authority regarding the list's composition. Here, the JNC certified its list on January 23, 2020, and Governor DeSantis selected two individuals from that list on May 26, 2010. There was ample time to file a challenge between those 2 dates. In fact, within that time (on February 14, 2020), Representative Thompson authored an opinion column, which she included in the appendix to her petition, asserting that Judge Francis was ineligible and should not have been included on the JNC list. However, Representative Thompson waited until July 13, 2020 to file the instant petition.[11]

Accordingly, because I conclude the issue is now moot, I do not address the merits of the challenge to the composition of the JNC list.

10. This Court has also recognized that the doctrine of laches can bar consideration of unreasonably delayed writ petitions where the delay prejudices the judicial process. *See*, *e.g.*, *McCray v. State*, 699 So. 2d 1366, 1368 (Fla. 1997).

11. Florida courts have also recognized that the delayed assertion of an argument can waive consideration of its merits. *See*, *e.g.*, *Hernandez v. State*, 960 So. 2d 816, 817 (Fla. 3d DCA 2007).

- 23 -

## B. Governor DeSantis' Selection

Representative Thompson alleges that Governor DeSantis exceeded his authority in selecting Judge Francis for appointment to this Court because she was not yet eligible for office when she was nominated or selected. However, I disagree.

In *Whiley v. Scott*, 79 So. 3d 702, 707 (Fla. 2011), this Court stated, "The term 'quo warranto' means 'by what authority,' and the writ is the proper means for inquiring into whether a particular individual has improperly exercised a power or right derived from the State." Further, in *League of Women Voters of Fla. v. Scott*, 232 So. 3d 264, 265 (Fla. 2017), this Court explained that "the history of the extraordinary writ reflects that petitions for relief in quo warranto are properly filed only after a public official has acted."

"The interpretation of a constitutional provision involves 'a question of law.' " *Adv. Op. to the Gov. re Implementation of Amendment 4, the Voting Restoration Amendment*, 288 So. 3d 1070, 1078 (Fla. 2020) (quoting *Crist v. Fla. Ass'n of Criminal Def. Lawyers, Inc. (FACDL)*, 978 So. 2d 134, 139 (Fla. 2008)). And "[f]irst and foremost, this Court must examine the actual language used in the Constitution." *Id.* (quoting *Graham v. Haridopolos*, 108 So. 3d 597, 603 (Fla. 2013)). " 'If that language is clear, unambiguous, and addresses the matter in issue,' then our task is at an end." *Id.* (quoting *Graham*, 108 So. 3d at 603).

Further, this Court gives the text its "plain, obvious, and common sense" meaning, "unless the context furnishes some ground to control, qualify, or enlarge it." *Id.* (quoting Joseph Story, *Commentaries on the Constitution of the United States* 157-58 (1833)).

Article V, section 11 of the Florida Constitution provides the following:

> (a) Whenever a vacancy occurs in a judicial office to which election for retention applies, the governor shall fill the vacancy by appointing for a term ending on the first Tuesday after the first Monday in January of the year following the next general election occurring at least one year after the date of appointment, one of not fewer than three persons nor more than six persons nominated by the appropriate judicial nominating commission.
> . . . .
> (c) The nominations shall be made within thirty days from the occurrence of a vacancy unless the period is extended by the governor for a time not to exceed thirty days. The governor shall make the appointment within sixty days after the nominations have been certified to the governor.

Nothing in article V, section 11 specifies that the Governor must only select nominees certified by the JNC that are eligible under article V, section 8 on the date of certification or the date of selection. Instead, the text of section 11 requires a governor to appoint from the nominations certified by the JNC, and Governor DeSantis has stated his intention to do so in regard to Judge Francis. The plain meaning of section 11 does not foreclose the possibility of an individual becoming eligible between the time a governor selects that individual from the JNC list and the time the individual assumes office.

Representative Thompson appears to argue that sections 8 and 11 of article V must be read together to require a governor to only select currently eligible nominees or only those that were eligible when nominated by the JNC, but those readings would be inappropriately adding words to the constitution in order to connect the eligibility requirements for justices in section 8 to the governor's responsibilities to fill judicial vacancies in section 11. And "[w]e [must] remain mindful that in construing a constitutional provision, we are not at liberty to add words that were not placed there originally or to ignore words that were expressly placed there at the time of adoption of the provision." *Pleus v. Crist*, 14 So. 3d 941, 945 (Fla. 2009).

This Court's precedent regarding the timing of when candidates for judicial office must meet the bar and residency eligibility requirements of article V, section 8 also supports my conclusion that the Governor has not exceeded his authority. In *Miller v. Mendez*, 804 So. 2d 1243, 1245 (Fla. 2001), this Court held "that a candidate for judicial office must be a resident of the territorial jurisdiction of the court at the time he or she assumes office," disapproving the conclusion "that the residence requirement refers to residence at the time of qualifying or taking the oath of candidate." Further, in *In re Advisory Opinion to the Governor*, 192 So. 2d 757, 759 (Fla. 1966), this Court stated that the bar membership eligibility requirement "refer[s] to eligibility at the time of assuming office and not at the

time of qualification or election to office." This precedent makes sense given the text of article V, section 8 provides that "[n]o person is *eligible for the office* of justice of the supreme court . . . unless the person is, and has been for the preceding ten years, a member of the bar of Florida." (Emphasis added.) In other words, the text of section 8 plainly addresses eligibility for "office," not eligibility for "nomination" or "selection." *Compare* art. V, § 8, Fla. Const. *with* art. V, § 3(a), Fla. Const. ("Of the seven justices, each appellate district shall have at least one justice elected or appointed from the district to the supreme court who is a resident of the district *at the time of the original appointment* or election." (emphasis added)).

Additionally, as acknowledged by the petition, Governor DeSantis has not appointed Judge Francis under this Court's precedent because she has not yet received a commission for her to assume office that has been attested by the Secretary of State. In *State ex rel. Lawson v. Page*, 250 So. 2d 257, 258 (Fla. 1971), this Court held that "[w]here, as in this case, no election by the voters or approval by the State Senate are required, a simple statement or letter of intent from the Governor saying he was appointing a person to office would not be final and valid unless and until a commission is executed by the Governor and attested by the Secretary of State." Here, on May 26, 2020, Governor DeSantis announced that he was appointing Judge Francis to this Court and that she would take office

- 27 -

on September 24, 2020.  The letter from Governor DeSantis to Judge Francis indicated that she soon would be receiving qualifying papers from the Department of State that would need to be filed before assuming office.  However, according to the Governor's response, Judge Francis has not yet received a commission. Therefore, pursuant to *Page*, Governor DeSantis' selection of Judge Francis from the JNC list cannot be considered a final appointment to this Court.  And because Judge Francis has not yet been appointed, Governor DeSantis could not have exceeded his authority by appointing an ineligible individual.

Of course, under this Court's precedent, Governor DeSantis would have exceeded his authority had he gone ahead and executed a commission for Judge Francis to assume office while she was ineligible.  In *In re Advisory Opinion to the Governor*, 192 So. 2d 757, 759 (Fla. 1966), this Court advised Governor Burns that he was "not authorized to sign [the] commission as provided by Section 14 of Article IV of the Florida Constitution for the term commencing January 3, 1967" because the individual would not have been a member of the Florida Bar for the constitutionally required number of years.  Similarly, *in Advisory Opinion to the Governor re Commission of Elected Judge*, 17 So. 3d 265, 267 (Fla. 2009), this Court advised Governor Crist that he was "not authorized to sign the commission of a circuit judge-elect under suspension from the practice of law at the time he is to take office" because "a lawyer who is suspended from the practice of law fails to

- 28 -

satisfy the constitutional eligibility requirements." However, according to the Governor's response, Judge Francis has not received an executed commission.

Accordingly, because the petition fails to demonstrate that Governor DeSantis exceeded his authority in selecting Judge Francis for appointment, I would deny quo warranto relief.

## C. Mandamus

Representative Thompson's petition also requests a writ of mandamus to compel the JNC to immediately nominate 6 individuals to fill the remaining vacancy on this Court from those individuals who originally applied for 2 vacancies and who were eligible to hold office as of January 23, 2020. Representative Thompson's petition strongly urges the JNC to consider, in composing the new list, the 6 African-Americans who originally applied and were eligible on January 23. Then, her petition asks this Court to compel Governor DeSantis to immediately appoint to this Court someone from the new list. However, because the JNC and the Governor do not have indisputable legal duties to perform these actions, I would deny mandamus relief.

"In order to be entitled to a writ of mandamus the petitioner must have a clear legal right to the requested relief, the respondent must have an indisputable legal duty to perform the requested action, and the petitioner must have no other adequate remedy available." *Huffman v. State*, 813 So. 2d 10, 11 (Fla. 2000).

- 29 -

In *Pleus*, 14 So. 3d 941, this Court granted a mandamus petition to compel Governor Crist to fill a vacancy on the Fifth District Court of Appeal and appoint a nominee from the JNC's list within 60 days of the certification. Governor Crist had rejected the list as certified and "requested that the JNC reconvene to consider the applications of three African-Americans who had applied to fill the vacancy." *Id.* at 943. In *Pleus*, this Court explained that article V, section 11 "requires the Governor to adhere to his duty to *make* an appointment within the mandated time frame from the certified list of nominees." *Id.* at 945. But here, Representative Thompson is not seeking a mandamus writ to compel Governor DeSantis to immediately appoint an eligible nominee from the list as certified. This Court's decision in *Pleus* supports such a request since the Governor has failed to make an appointment within the constitutionally mandated time. Instead though, Representative Thompson's mandamus petition seeks to compel the JNC to do what this Court is *Pleus* determined that the Governor had no authority to do, namely compel the JNC to reconvene and certify a new list from the original applicants, reconsidering previously rejected African-American applicants to increase the diversity of the judiciary. While a diverse judiciary is an important and worthy goal, the JNC simply does not have a clear and indisputable duty to reconvene and certify a new list of 6 for 1 vacancy from the 31 applicants who

applied to fill 2 vacancies, and the Governor does not have the clear duty to appoint from such a list.

Accordingly, I would deny mandamus relief.

## II. CONCLUSION

To summarize, the challenge to the composition of the JNC list is now moot, the petition has not established that Governor DeSantis exceeded his authority, and the JNC and the Governor do not have indisputable legal duties to perform the requested actions. Accordingly, I concur in result only to deny the petition for writs of quo warranto and mandamus.

Original Proceeding – Quo Warranto

William R. Ponall of Ponall Law, Maitland, Florida, and Lisabeth J. Fryer of Lisabeth J. Fryer, P.A., Sanford, Florida,

> for Petitioner, Geraldine F. Thompson, in her Official Capacity as Representative in the Florida House of Representatives

Joe Jacquot, General Counsel, Nicholas A. Primrose and Kasey B. O'Connor, Deputy General Counsel, and Joshua E. Pratt, Assistant General Counsel, Executive Office of the Governor, Tallahassee, Florida,

> for Respondent, The Honorable Ron DeSantis, in his Official Capacity as Governor of Florida

Daniel E. Nordby of Shutts & Bowen LLP, Tallahassee, Florida,

> for Respondent, Daniel E. Nordby, in his Official Capacity as Chair of the Florida Supreme Court Nominating Commission

Jesse Panuccio, Commissioner, Supreme Court Judicial Nominating Commission, Fort Lauderdale, Florida,

for Amicus Curiae Supreme Court Judicial Nominating Commission